RECEIVED
JUN 2 4 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK | CIVIL ACTION NO. 09-0059 |
| VERSUS | JUDGE DOHERTY |
| WILLIAM H. BOYLSTON | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court are the Motion to Strike Allegations and to Strike Request for Jury Trial [Doc. 13] and the Amended Motion to Strike [Doc. 35][1] filed by plaintiff and defendant-in-counterclaim Whitney National Bank ("Whitney"). The motion to strike is opposed by defendant and plaintiff-in-counterclaim, William H. Boylston ("Dr. Boylston"). In the motion to strike, Whitney moves the Court to strike, from Dr. Boylston's Counterclaim, (i) several allegations concerning an alleged sexual relationship among Dr. Boylston and/or two individuals who are not parties to this matter and (ii) the jury trial demand made by Dr. Boylston. The motion is opposed by Dr. Boylston [Doc. 21]; Whitney has filed a reply brief to Dr. Boylston's opposition brief [Doc. 30]. For the following reasons, Whitney's motion to strike certain provisions of Paragraph 6, 7 and 9 of Dr. Boylston's Amended Counterclaim is DENIED. Additionally, Whitney's request for a protective order pursuant to Rule 5.2(e) is DENIED.

I. **Factual and Procedural Background**

The instant lawsuit contains two components in general terms, an original lawsuit filed by a bank against a customer alleging default on a loan, and a counterclaim by the customer against the

---

[1] The Amended Motion to Strike was filed on June 5, 2009 after Dr. Boylston filed his Amended Counterclaim, which changed the paragraphs in which he raises the allegedly "scandalous" allegations.

bank alleging fraud and conspiracy to commit fraud for "misrepresentations" made by an employee of the bank, which the customer alleges induced the customer to execute the relevant loan documents. Specifically, in the original lawsuit filed by Whitney against Dr. Boylston, a medical doctor who practices in Houston, Texas, Whitney alleges Dr. Boylston executed a Promissory Note dated September 7, 2007, which evidences a revolving line of credit not to exceed $250,000. Whitney alleges Dr. Boylston defaulted on the Promissory Note and is, pursuant to the documents at issue, liable for the principal amount due in the amount of $246,644.14, plus all accrued, unpaid interest running to the date of actual payment by Dr. Boylston, all costs of pursuing the collection action, and reasonable attorneys' fees.

Dr. Boylston filed an Answer and Counterclaim on February 6, 2009 [Doc. 6]; Dr. Boylston filed an Amended Answer and Counterclaim on May 29, 2009 [Doc. 33]. In his Amended Answer, Dr. Boylston admits he executed the Promissory Note, however, in his Amended Counterclaim, Dr. Boylston sets forth a series of facts he alleges support his claims of fraud and conspiracy to commit fraud against Whitney and, therefore, argues he is not liable for the amounts due under the Promissory Note or the other amounts argued by Whitney as owing. Whitney seeks to strike certain portions of the following paragraphs as set forth in Dr. Boylston's Amended Counterclaim as follows:

6.
In 2000, Dr. Boylston met Douglas K. Lormand through a massage session. Thereafter, Dr. Boylston and Mr. Lormand's relationship became more and more intimate and included a sexual component.

7.
As Dr. Boylston grew more involved with and attached to Mr. Lormand, he grew to rely on Mr. Lormand's advice and to trust that Mr. Lormand had his best interests at heart.

9.
In 2005, in an effort to convince Dr. Boylston as to the level of intimacy that he knew Mr. Breaux, Mr. Lormand related to Dr. Boylston that he was involved in an intimate relationship with Mr. Breaux.

Specifically, Whitney seeks to strike the second sentence of Paragraph 6, the first phrase of Paragraph 7, and the entirety of Paragraph 9 on grounds these paragraphs contain allegations concerning an alleged sexual relationship among Dr. Boylston and/or two individuals who are not parties to this matter, and that the allegations are "sordid and scandalous" and "utterly unnecessary and irrelevant to Dr. Boylston's claims." Whitney also seeks to strike Dr. Boylston's request for a jury trial – contained in Paragraph 56 of Dr. Boylston's Amended Answer and Counterclaim – on grounds the Promissory Note executed by Dr. Boylston contains an express waiver of jury trial.

Although Whitney's motion to strike was filed contemporaneously with a motion to dismiss, that motion to dismiss was granted in part and denied in part at a telephone status conference conducted with this Court on May 14, 2009.[2] At the May 14, 2009 status conference, given the naming of Messrs. Lormand and Breaux in Dr. Boylston's Counterclaim, this Court *sua sponte* raised the issue of the potential applicability of the E-Government Act to the facts of this case. The parties were ordered to file supplemental briefs addressing this issue before the Court rendered a ruling on Whitney's motion to strike. Those briefs are now before the Court,[3] and the issue is ripe for consideration.

## II. Law and Argument

Whitney asserts jurisdiction over this matter exists pursuant to 28 U.S.C. §1332 (diversity

---

[2] *See* Minutes of Telephone Status Conference, Doc. 31.

[3] *See* Docs. 32 & 34.

of citizenship), as the parties are citizens of different states,[4] and the matter in controversy exceeds $75,000. As jurisdiction in this matter is premised upon diversity of citizenship, Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**B.     Whitney's Motion to Strike**

   **1.     Applicability of the E-Government Act**

Each party has filed a supplemental brief addressing the potential applicability of the E-Government Act to the facts of this case as conduct of two individuals – who are non-parties to the suit – has been specifically referenced in Dr. Boylston's Counterclaim.

Portions of the E-Government Act have been codified in the Federal Rules of Civil Procedure, including Rule 5.2(a), which states:

> **(a) Redacted Filings.** Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
>> **(1)** the last four digits of the social-security number and taxpayer-identification number;
>>
>> **(2)** the year of the individual's birth;
>>
>> **(3)** the minor's initials; and
>>
>> **(4)** the last four digits of the financial-account number.

---

[4] All parties appear to agree plaintiff Whitney is a national banking association with its primary place of business located in New Orleans, Louisiana and defendant Dr. Boylston is a citizen of Texas. In his Answer, Dr. Boylston admits this Court has jurisdiction over the subject mater of this Complaint under 28 U.S.C. §1332. [*See* Rec. Docs. 1 and 6].

Fed. R. Civ. P. 5.2(a).[5] The parties agree the foregoing rule does not apply, by its own terms, to the facts and circumstances presented in this case.

However, Whitney contends another provision of Rule 5.2 – Rule 5.2(e) – grants this Court authority to issue a protective order to address information beyond the specifically-listed types of

---

[5] The Western District of Louisiana has promulgated Local Rule 5.7.12, which partially mirrors Rule 5.2 of the Federal Rules of Civil Procedure, and which restricts the usasge of certain personal identifying data in pleadings and documents filed with the Court. Local Rule 5.7.12 states:

**LR 5.7.12W Public Access**

In compliance with the policy of the Judicial Conference of the United States, and the E-Government Act of 2002, and in order to promote electronic access to case files while also protecting personal privacy and other legitimate interests, parties shall refrain from including, or shall partially redact where inclusion is necessary, the following personal data identifiers from all pleadings filed with the court, including exhibits thereto, whether filed electronically or in paper, unless otherwise ordered by the Court.

  a. **Social Security numbers.** If an individual's Social Security number must be included in a pleading, only the last four digits of that number should be used.
  b. **Names of minor children.** If the involvement of a minor child must be mentioned, only the initials of that child should be used.
  c. **Dates of birth.** If an individual's date of birth must be included in a pleading, only the year should be used.
  d. **Financial account numbers.** If financial account numbers are relevant, only the last four digits of these numbers should be used.
  e. **Home Addresses.** If home addresses are relevant, only the city and state should be used.

In compliance with the E-Government Act of 2002, a party wishing to file a document containing the personal data identifiers listed above may

  a. file an unredacted version of the document under seal, or
  b. file a reference list under seal. The reference list shall contain the complete personal data identifier(s) and the redacted identifier(s) used in its(their) place in the filing. All references in the case to the redacted identifiers included in the reference list will be construed to refer to the corresponding complete personal data identifier. The reference list must be filed under seal, and may be amended as of right.

The unredacted version of the filing or the reference list shall be retained by the Court. The Court may require the party to file a redacted copy for the public record.

The responsibility for redacting personal identifiers rests solely with counsel and the parties. The Clerk will not review filing for compliance with this rule.

*Adopted April 2005*

private data noted in Rule 5.2(a). Rule 5.2(e) states:

> **(e) Protective Orders.** For good cause, the court may by order in a case:
>
> (1) require redaction of additional information; or
> (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court.

Fed.R.Civ.P 5.2(e). Specifically, Whitney requests that this Court issue a protective order requiring "all references to Messrs. Lormand and Breaux be redacted and replaced with anonymous names -- such as Messrs. Jones and Smith, for instance." In order to do so, Whitney contends the Court would have to make a finding that good cause has been shown for such an order. Whitney contends its argument demonstrating good cause can be found in its originally-filed motion to strike, discussed hereinbelow.

### 2. The Merits of the Motion to Strike

In its motion to strike and amended motion to strike, Whitney moves the Court for an order striking certain portions of Paragraphs 6, 7 and 9 of Dr. Boylston's Amended Counterclaim on grounds these paragraphs contain allegations concerning an alleged sexual relationship among Dr. Boylston and/or two individuals who are not parties to this matter – Mr. Breaux and Mr. Lormand – and that the allegations are "utterly unnecessary and irrelevant to Boylston's claims." Whitney also seeks to strike Dr. Boylston's request for a jury trial on grounds the Promissory Note executed by the plaintiff contains an express waiver of jury trial. The Court will consider each argument in turn.

#### a. Paragraphs 6, 7 and 9 of the Amended Counterclaim

Paragraphs 6, 7 and 9 Dr. Boylston's Amended Counterclaim state as follows:

6.

In 2000, Dr. Boylston met Douglas K. Lormand through a massage session. Thereafter, Dr. Boylston and Mr. Lormand's relationship became more and more intimate and included a sexual component.

7.

As Dr. Boylston grew more involved with and attached to Mr. Lormand, he grew to rely on Mr. Lormand's advice and to trust that Mr. Lormand had his best interests at heart.

9.

In 2005, in an effort to convince Dr. Boylston as to the level of intimacy that he knew Mr. Breaux, Mr. Lormand related to Dr. Boylston that he was involved in an intimate relationship with Mr. Breaux.

Whitney contends the foregoing allegations are "sordid and scandalous" and are "utterly unnecessary and irrelevant to [Mr.] Boylston's claims." Dr. Boylston responds that the allegations are necessary and relevant to his defenses and counterclaims, as the allegations concerning the relationship among and/or between the three individuals involved are "necessary in order to understand how and why Dr. Boylston came to be put in a position where he could be taken advantage of and defrauded." As Dr. Boylston explained in his original response to Whitney's motion to strike:

> Whitney would like this to be about a promissory note and nothing more. At the end of the day, Whitney will have to explain why, with regard to Dr. Boylston, it ended up with an unsecured signature loan for $250,000, when Dr. Boylston, a Texas resident, has no non-exempt assets. But for the purpose of initial pleadings, the counterclaim does what it is supposed to do — it addresses the facts surrounding how the promissory note came to be signed, the position of trust that Dr. Boylston believed he was in, and raises the issue about whether vices of consent will adversely impact the enforceability of that note and its terms and conditions. These vices of consent, the fraud perpetrated by Whitney's agent, and the damages that Dr. Boylston has suffered, serve as the basis for his claim and establish the reason why the promissory note is unenforceable.[6]

---

[6] See Dr. Boylston's opposition brief to Whitney's Motion to Strike, Doc. 21, at p. 2.

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may strike from a pleading . . . *any redundant, immaterial, impertinent, or scandalous matter.*" Fed. R. Civ. P. 12(f) (emphasis added). Although there is a dearth of Fifth Circuit jurisprudence addressing motions to strike in any detail, this Court notes the well-established rule in the Fifth Circuit that motions to strike under Rule 12(f) are "a drastic remedy to be resorted to only when required for the purposes of justice...." *See, e.g, Augustus v. Board of Pub. Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir.1962) (*quoting Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953). *See also Turner v. Ethicon Endo-Surgery, Inc.*, 2003 WL 22872103 (E.D.La. Dec.2, 2003) (noting motions to strike are disfavored and courts grant them infrequently). Accordingly, other district courts have determined such a motion should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Johnson v. Harvey*, 1998 WL 596745, at *7 (E.D.La.1998) (*quoting Veazie v. Southern Greyhound Lines*, 374 F.Supp. 811, 815 (E.D.La.1994)). *See also Boyd's Bit Service, Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F.Supp.2d 938, 944 (W.D.La.,2004) (J. Melancon) (motions to strike are disfavored and will usually be denied unless the allegations have no possible relevance to the controversy and may cause prejudice to one of the parties).[7]

After consideration of the arguments of the parties, this Court concludes the pertinent portions of Paragraphs 6, 7 and 9 are not so scandalous, in and of themselves, as to mandate they be stricken from the record. First, this Court finds nothing inherently scandalous in Paragraph 7. Paragraph 6 states Dr. Boylston met Mr. Lormand through a "massage session," and that their

---

[7] This Court is not bound by the opinions of other district court but notes the district court opinions are cited here because of a lack of Fifth Circuit opinions addressing this issue in any detail, and shed light on how other district courts have addressed this issue.

relationship became "more and more intimate and included a sexual component." Paragraph 9 refers to the "intimate" relationship between Mr. Lormand and Mr. Breaux. Although potentially embarrassing to the individuals noted, the foregoing allegations are not on their face, scandalous. Furthermore, this Court finds the allegations concerning the relationship among and between Dr. Boylston, Mr. Lormand and Mr. Breaux are necessary and relevant to Dr. Boylston's allegations of fraud and conspiracy to commit fraud.[8] That neither Mr. Lormand nor Mr. Breaux have been named as defendants in the lawsuit does not change the Court's conclusion on this issue. The fact that Dr. Boylston has chosen to sue Whitney – and not Mr. Breaux – does not change the fact that the factual scenario that potentially makes Whitney liable involves actions taken by their then employee, Mr. Breaux. Indeed, Dr. Boylston is alleging that Whitney is liable and responsible for the acts of its employee Mr. Breaux under the rules of agency. Therefore, the actions of Mr. Breaux that may be imputed to Whitney are essential elements of defense raised as to the claims made by Whitney.

Thus, for the foregoing, reasons, IT IS ORDERED that Whitney's motion to strike certain portions of Paragraphs 6, 7 and 9 of Dr. Boylston's Counterclaim is DENIED.

IT IS FURTHER ORDERED that Whitney's request for a protective order pursuant to Rule 5.2(e) is DENIED. This Court concludes Whitney fails to show good cause for the issuance of a protective order in this matter, finding the allegations at issue are not on their face sufficiently

---

[8] This Court notes Whitney's motion to dismiss is the second time Whitney has sought to limit access to the information contained in Paragraphs 3 and 4 of Dr. Boylston's Counterclaim. On February 10, 2009, shortly after the Counterclaim was filed, Whitney filed a Motion to Seal the Record for essentially the same reasons that it now seeks to strike certain allegations of the Counterclaim. That motion was denied by the magistrate judge. *See* Doc. 16. In denying the Motion to Seal, Magistrate Judge Hill noted:

> The pleading of the relationship between the parties, while perhaps not absolutely necessary, certainly provides a background, a motive, a method of accomplishing the alleged scheme. In that sense it is not irrelevant to the counterclaim. It is highly relevant.

*See* Transcript of Hearing on Motion to Seal, Doc. 20, p. 14, ll. 9-13).

scandalous, and the remedy requested cannot afford the desired protection.

### b. Dr. Boylston's Jury Demand

Whitney seeks to strike Dr. Boylston's request for a jury trial on grounds the Promissory Note executed by Dr. Boylston contains an express waiver of jury trial. The Promissory Note signed by Dr. Boylston on September 7, 2007 contains a provision that states:

> **WAIVE JURY. BORROWER AND LENDER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER BORROWER OR LENDER AGAINST THE OTHER.**

Whitney cites this Court to a district court opinion from the Eastern District of Louisiana, *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F.Supp.2d 694, 706-07 (E.D. La.1999), in which the district court set forth a concise statement of the law with respect to waiver of the right to jury trial in contracts, particularly loan documents such as the loan document at issue in this case. As the Court in *Westside-Marrero Jeep Eagle, Inc.* explained:

> The Seventh Amendment preserves a right to a jury trial on issues of fact in suits for breach of contract damages between private party litigants. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court, however, has long recognized that a private litigant may waive its right to a jury in civil cases. Waiver can be either express or implied. *Commodity Futures Trading Comm. v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986); *see also D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972) (contractual waiver of due process rights). Waiver requires only that the party waiving such right do so "voluntarily" and "knowingly" based on the facts of the case. *D.H. Overmyer,* 405 U.S. at 185-86, 92 S.Ct. at 782; *Brookhart v. Janis,* 384 U.S. 1, 4, 5, 86 S.Ct. 1245, 1246, 1247, 16 L.Ed.2d 314 (1966). The acceptance of contract provisions providing for dispute resolution in a forum where there is no entitlement to a jury trial may satisfy the "voluntary" and "knowing" standard. *See, e.g., Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l,* 373 F.2d 136, 142 (8th Cir.) *cert. denied,* 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967). Agreements waiving the right to trial by jury are neither illegal nor contrary to public policy. *McCarthy v. Wynne,* 126 F.2d 620, 623 (10th Cir.), *cert. denied,* 317 U.S. 640, 63 S.Ct. 31, 87 L.Ed. 515 (1942); *see also Leasing*

*Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir.1986) (right to jury trial, although fundamental, may be knowingly and intentionally waived by contract); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.1985) (considering it "clear that the parties to a contract may by prior written agreement waive the right to jury trial"). Nevertheless, jury trial waivers are common in loan agreements and loan guarantees, and these are regularly enforced. *See, e.g., National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 667-8 (S.D.N.Y.1991), *aff'd sub nom. Yaeger v. National Westminster*, 962 F.2d 1 (2d Cir.1992); *Oei v. Citibank, N.A.*, 957 F.Supp. 492 (S.D.N.Y.1997); *Cooperative Finance Assoc. v. Garst*, 871 F.Supp. 1168, 1171 (N.D.Iowa 1995); *Connecticut Nat'l Bank v. Smith*, 826 F.Supp. 57, 59 (D.R.I.1993); *Okura & Co. v. Careau Group*, 783 F.Supp. 482, 488 (C.D.Cal.1991); *In re \*707 Reggie Packing Co.*, 671 F.Supp. 571, 574 (N.D.Ill.1987).

56 F.Supp.2d at 706-07.

The district court in *Westside-Marrero Jeep Eagle, Inc.* noted the Fifth Circuit has not determined whether the movant or the opposing party bears the burden of proving a contractual waiver of the right to a jury trial.[9] In determining whether a waiver was made "knowingly and voluntarily," courts consider several factors: (1) whether the contract was negotiable, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties, (4) whether the waiving party was represented by counsel, and (5) the business acumen of the party opposing the waiver. *Westside-Marrero Jeep Eagle, Inc.*, 56 F.Supp.2d at 707, citing *Whirlpool Financial Corp. v. Sevaux*, 866 F.Supp. 1102, 1105 (N.D.Ill.1994); *Morgan Guaranty Trust Co. of New York v. Crane*, 36 F.Supp.2d 602, 604 (S.D.N.Y.1999).

In the instant case, Whitney analyzes each of the foregoing factors, noting why the factors favor this Court's finding that Dr. Boylston waived his right to a jury trial in this matter. In response, Dr. Boylston does not argue the application of the facts of this case to any relevant factor as set forth

---

[9] Other circuits are split on this question. *Compare Leasing Serv. Corp.*, 804 F.2d at 833 (4th Cir. 1986) (burden is on party seeking enforcement of waiver provision) and *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2nd Cir. 1977) (same) with *K.M.C. Co.*, 757 F.2d at 755 (6th Cir. 1985) (burden is on party seeking invalidation of waiver provision). *See Westside-Marrero Jeep Eagle, Inc.*, 56 F. Supp.2d at 707.

above, but rather, argues that because he has alleged his consent to the Promissory Note was vitiated by duress, fraud and misrepresentation, then the entirety of the Promissory Note is null and fails for lack of consent, including all its terms and conditions, which includes the provision for waiver of jury trial. Dr. Boylston contends it would be patently unfair to hold at this juncture that he has waived his right to a trial by jury based on a provision contained in the Promissory Note when he is challenging the validity of the entirety of the Promissory Note. Ergo, Dr. Boylston argues the motion to strike the request for a jury trial is premature.

While not conceding the issue, Whitney requests that if the Court cannot, for any reason, resolve the issue of jury trial waiver at this time, the Court either defer ruling on the motion or deny it as premature. Whitney further requests that the Court recognize Whitney's reservation of its objection to trying this matter to a jury and that the Court preserve Whitney's ability to raise the issue at a later date.

After consideration of the arguments of the parties, and further considering the argument of Dr. Boylston and noting Dr. Boylston presented this Court with no evidence on his part with which to undertake a meaningful analysis of the factors considered in *Westside-Marrero Jeep Eagle, Inc.*, although not determinative, the factors noted in *Westside-Marrero Jeep Eagle, Inc.* are enlightening. The Court recognizes Whitney's objection to trying this case to a jury but also, notes Dr. Boylston's argument that the Promissory Note is vitiated by the underlying fraud and therefore, all aspects must fail. However, there is no way this Court can determine whether fraud did nor did not exist prior to trial if genuine disputes exist as to the facts, as it appears they do. Therefore, this Court cannot make that determination upon that argument, at this juncture. Thus, the Court ORDERS Dr. Boylston to submit his response to Whitney's argument as to the factors discussed in the noted Eastern District

case, within ten days, or this Court will DEEM that argument waived by Dr. Boylston.

Upon receipt of Dr. Boylston's response, this Court will consider its procedural options. The parties are put on notice that if after review of the evidence and factors suggested by *Westside-Marrero Jeep Eagle, Inc.* the issue is not fully resolved, this Court will consider trying the case to an advisory jury, as to the existence of fraud likely determining or greatly influencing the final determination as to whether the right to a jury trial has been waived.

Considering the foregoing,

IT IS ORDERED that Dr. Boylston's respond to Whitney's argument as to the factors discussed in the noted Eastern District case, within ten days, or this Court will DEEM that argument waived by Dr. Boylston.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that Whitney's motion to strike the second sentence of Paragraph 6, the first phrase of Paragraph 7, and the entirety of Paragraph 9 of Dr. Boylston's Amended Counterclaim is DENIED.

IT IS FURTHER ORDERED that Whitney's request for a protective order pursuant to Rule 5.2(e) is DENIED. This Court concludes Whitney fails to show good cause for the issuance of a protective order as the allegations at issue are not on their face sufficiently scandalous, and the remedy requested cannot afford the desired protection.

IT IS FURTHER ORDERED that Dr. Boylston's submit a response to Whitey's argument as to the factors discussed in *Westside-Marrero Jeep Eagle, Inc.*, within ten days, or this Court will DEEM that argument waived by Dr. Boylston.

13

Upon receipt of Dr. Boylston's response, this Court will consider its procedural options. The parties are put on notice that if after review of the evidence and factors suggested by *Westside-Marrero Jeep Eagle, Inc.* the issue is not fully resolved, this Court will consider trying the case to an advisory jury, as to the existence of fraud likely determining or greatly influencing the final determination as to whether the right to a jury trial has been waived.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___24___ day of June, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE