RECEIVED

MAY 1 7 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK | CIVIL ACTION NO. 09-0059 |
| VERSUS | JUDGE DOHERTY |
| WILLIAM H. BOYLSTON | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Before the Court is the "Motion to Dismiss Third-Party Complaint, or in the Alternative, Motion for Summary Judgment" filed by Third-Party Defendant Douglas Lormand [Doc. 129]. In his motion, third-party defendant Lormand seeks dismissal of the third-party claims asserted against him by Dr. William H. Boylston, the defendant in this matter, on grounds the claims cannot stand under Rule 14(a) of the Federal Rules of Civil Procedure. The motion is opposed by Dr. Boylston [Doc. 133]. For the following reasons, the motion to dismiss is GRANTED.

### I.    Factual and Procedural Background

This Court has set forth the factual and procedural background of the instant case in prior rulings and will do so herein only briefly. At issue in this case are two financial transactions. The first occurred on or around February 15, 2007, when Whitney National Bank ("Whitney") loaned Dr. Boylston and Mr. Lormand $239,200.00 to purchase a townhouse in Houston, Texas. Dr. Boylston and Mr. Lormand jointly mortgaged the property to the bank to secure repayment of the loan. The second transaction occurred on or around September 7, 2007, when Dr. Boylston borrowed $250,000.00 on an unsecured, revolving line of credit and used those monies to pay off the mortgage on the townhouse. Dr. Boylston was solely responsible for the September 7, 2007 debt to Whitney

(which became the subject of Whitney's lawsuit against Dr. Boylston after Dr. Boylston failed to make payments on the September 7, 2007 promissory note). Subsequently, Dr. Boylston deeded his interest in the Houston townhouse to Mr. Lormand. At that point, Mr. Lormand owned the townhouse free and clear of any mortgage, and Dr. Boyston was solely liable for the $250,000.00 indebtedness to Whitney on the individual promissory note.

Whitney ultimately filed suit against Dr. Boylston, alleging Dr. Boylston defaulted on the September 7, 2007 promissory note and was, therefore, liable for the entire principal amount due, in the amount of $246,644.14, plus all accrued, unpaid interest running to the date of actual payment by Dr. Boylston, all costs of pursuing the collection action, and reasonable attorneys' fees. Dr. Boylston filed an Answer and Counterclaim to Whitney's lawsuit on February 6, 2009 [Doc. 6]; Dr. Boylston filed an Amended Answer and Counterclaim on May 29, 2009 [Doc. 33]. In his Amended Answer, Dr. Boylston admitted he executed the September 7, 2007 promissory note. However, Dr. Boylston asserted a counterclaim against Whitney for fraud and conspiracy, arguing he was not liable for the amounts due under the September 7, 2007 promissory note due to Whitney's fraud and conspiracy to commit fraud. Dr. Boylston also asserted third-party claims for fraud and conspiracy against Mr. Lormand (it is that third-party claim which is the immediate subject of this motion).

Whitney, thereafter, filed a motion for summary judgment, arguing it was entitled to recover on the promissory note as a matter of law, and this Court agreed, concluding Dr. Boylston provided no evidence of fraud *on the part of Whitney*. This Court, also, held Dr. Boylston, nonetheless, would not be entitled to recover on his counterclaims for fraud and conspiracy *against Whitney*, as Dr. Boylston had unclean hands in connection with the September 7, 2007 transaction. Therefore, this Court entered summary judgment on behalf of Whitney on its claim to recover on the September 7,

2007 promissory note.

Thereafter, the only claims remaining before this Court are Dr. Boylston's third-party claims against Mr. Lormand for fraud and conspiracy. In the instant motion to dismiss, Mr. Lormand argues because this Court has concluded there is no evidence of fraud or conspiracy to defraud Dr. Boylston on the part of Whitney, and furthermore, because Dr. Boylston had unclean hands in connection with the September 7, 2007 transaction, Dr. Boylston's third-party complaint fails to state a cause of action and has no merit as a matter of law, also arguing two more specific reasons: (1) without a conspiracy between Mr. Lormand and Whitney, Mr. Lormand is not liable to Dr. Boylston for all or part of Whitney's claim against Dr. Boylston, which is necessary for Dr. Boylston to maintain a third-party demand; and (2) with unclean hands, Dr. Boylston "is precluded from raising fraud and that is the only claim stated in his Third Party Complaint."

## II. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[1] When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto.[2] The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[3] Conclusory allegations and unwarranted deductions of fact

---

[1] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[2] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[3] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

are not accepted as true.[4] Thus, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[5]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[6] The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels and conclusions."[7] The allegations must be sufficient "to raise a right to relief above the speculative level,"[8] and "the pleading must contain something more... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[9] "While a complaint... does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"[10] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[11]

---

[4] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins*, 224 F.3d at 498.

[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

[6] *Twombly*, 127 U.S. at 570.

[7] *Id.* at 555, citing *Papasan*, 478 U.S. at 286.

[8] *Id.* at 555.

[9] *Id.* at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

[10] *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted) (emphasis added). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

[11] *Id.* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] Furthermore, "determining whether a complaint states a plausible claim for relief... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13] As the Supreme Court further explained:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[14]

The Fifth Circuit succinctly explained the *Twombly* "plausibility" standard of pleading applied to Fed. R. Civ. P. 8(a)(2) as follows:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."[15]

Contrary to the argument that the decisions in *Twombly* and *Ashcroft* have changed the pleading requirements under Fed. Rule Civ. P. 8, the Fifth Circuit emphasized *Twombly* does not create a heightened pleading standard and does not alter, but only "explicates" Rule 8(a)(2), because

---

[12] *Ashcroft*, 129 S.Ct. at 1949.

[13] *Ashcroft*, 129 S.Ct. at 1950.

[14] *Id.* at 1950.

[15] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir. 2008) quoting *Twombly*. (Footnotes omitted).

5

*Twombly* itself recognizes pleading requirements can only by changed by amendment of the Federal Rules.[16] The Supreme Court clearly stated its intention as follows:

> In reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished "by the process of amending the Federal Rules, and not by judicial interpretation."... On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires.... Here, our concern is not that the allegations were insufficiently "particular[ized]"... rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.... [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.[17]

Literally days after *Twombly* was decided, the Supreme Court, citing *Twombly*, stated the following:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'[18]

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken

---

[16] *See Lormand*, at 258, n. 29, citing *Twombly*, 550 U.S. at 569, 127 S.Ct. at 1973 n.14.

[17] *Twombly*, 555 U.S. at 569 n.14, 570. (Citations omitted).

[18] *Erickson v Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007).

[19] *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

6

in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8 (a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim."[20]

Against this standard, the Court now compares the allegations of the third-party complaint to the particular theories of law under which Dr. Boylston seeks relief.

### III. Law and Analysis

Mr. Lormand argues that without a conspiracy between Mr. Lormand and Whitney, Mr. Lormand is not liable to Dr. Boylston for all or part of Whitney's claim against Dr. Boylston, which, procedurally, is necessary for Dr. Boylston to maintain a third-party demand. Mr. Lormand contends this Court has already determined there is no evidence that Whitney engaged in a conspiracy with Mr. Lormand to defraud Dr. Boylston; and the Court has further concluded only Dr. Boylston is liable on the September 7, 2007 promissory note. Therefore, Mr. Lormand argues, Dr. Boylston cannot "pass on" his liability to Whitney under the September 7, 2007 promissory note to Mr. Lormand, thus, a third party claim is not procedurally proper.

Rule 14 of the Federal Rules of Civil Procedure states in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

---

[20] *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S. Ct. at 1965.

Fed. R. Civ. P. 14(a)(1).

Although there are very few Fifth Circuit cases addressing the scope of Rule 14, in *United States v. Grasso & Son, Inc.*, 380 F.2d 749, 751-52 (5th Cir. 1967)(emphasis added), the Fifth Circuit explained the nature of impleader actions as follows:

> **... an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim.**
>
> [ ... ]
>
> The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader *only in cases where the third party's liability was in some way derivative of the outcome of the main claim*. In most such cases it has been held that for impleader to be available *the third party defendant must be 'liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff.' [] Stating the same principle in different words, other authorities declare that the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery, or that the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant[]. Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim.*

Consistent with the foregoing, other circuits have stated Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because a third-party complaint must be founded on *a third party's actual or potential liability to the defendant* for all or part of the plaintiff's claim against the defendant. *See American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008), *citing United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir.1987).

However, while Rule 14 governs the procedure for impleading third parties, reference must

be had to applicable state law to determine whether there is a substantive right to the relief sought. Only where state law provides a substantive basis for recovery is impleader permissible. *See, e,g., Travelers Ins. Co. v. Busy Elec. Co.*, 294 F.2d 139, 144 (5th Cir. 1961) ("If Louisiana allows contribution, then this facility is available to effectuate it. If Louisiana does not allow contribution, then there is no contingent liability to be asserted, and to allow an impleader would be to create, through Federal Rules, a right which Louisiana denies.").

Mr. Lormand argues Dr. Boylston cannot maintain a third-party demand against him, because Mr. Lormand cannot be liable to Dr. Boylston *for all or part of Whitney's recovery on the September 7, 2007 promissory note*. **Indeed, Dr. Boylston is the only obligor under that note, therefore, only he is liable under that note**. Because Dr. Boylston is the only obligor under the September 7, 2007 promissory note, and the issue is one *of contract* and not tort, Dr. Boylston cannot "pass on" his contractual liability under that note to Mr. Lormand.

In response, Dr. Boylston argues his third-party claim against Mr. Lormand is in the "nature" of indemnity or contribution, because should Dr. Boylston be found to be liable to the Bank – and Dr. Boylston has, in fact, been found liable to Whitney by virtue of this Court's ruling on Whitney's motion for summary judgment – Dr. Boylston argues Mr. Lormand should contribute to the payment of the bank's claim under the individual promissory note. Furthermore, Dr. Boylston argues "[t]he issue is not whether Boylston has a legal basis to hold Lormand responsible for 'the promissory note' – it is whether Boylston has a legal claim for indemnity or contribution from Lormand for the debt in which he was complicit."

Louisiana law governs whether Dr. Boylston has a claim for contribution or indemnity from Mr. Lormand. In Louisiana, contribution and indemnity are defined as follows:

Under Louisiana law, **joint tortfeasors** are liable in solido **to a person whom they injure**, and their victim may, therefore, recover the entire amount of his injury from any one of them. If the separate acts of two persons cause consecutive injuries to another and the harm caused by each cannot be determined, the two are considered joint tortfeasors and each is liable for the entire harm. *A joint tortfeasor may enforce contribution or indemnity from another joint debtor by making him a third party defendant in the suit.*

[ . . . ]

Indemnity is due when fairness requires that one person bear the total responsibility for an injury. The basis for indemnity in the civil law, as in the common law, is restitution, the indemnitor having been unjustly enriched when the person seeking indemnity has discharged liability that was his responsibility. A solidary debtor who pays a debt that "concern [s] only" a co-debtor is, therefore, entitled to indemnity from the debtor in whose behalf the debt arose. Thus a person *who is held liable vicariously or passively for* **the tort** *of another* is due indemnity from the culpable tortfeasor. *One who is himself at fault, however, is not due indemnity because liability for indemnity exists only when the party seeking indemnity, the indemnitee, is free of fault and has discharged a debt that should be paid wholly by the indemnitor.* The Louisiana Supreme Court has summed up the principle this way: indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to the person primarily responsible, *while* **contribution** *apportions the loss among those* **jointly responsible**.

[ . . . ]

*The right to contribution exists only in favor of a party* **who has paid what someone else owes**.

*Diggs v. Hood*, 772 F.2d 190, 193, 197 (5th Cir. 1985) (discussing Louisiana law) (footnotes omitted) (emphasis added). *See also Travelers Ins. Co. v. Busy Elec. Co.*, 294 F.2d 139, 144 (5th Cir. 1961) ("Louisiana law recognizes the substantive right of indemnity among those who may be characterized as joint tort-feasors at least in the sense that action by each has constituted a breach of some legal duty with resulting harm.");[21] *Hamway v. Braud*, 838 So.2d 803, 807, 2001-2364 , 5

---

[21] Other circuits state the third-party complaint is in the nature of an indemnity or contribution claim. *See, e.g., American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008).

(La.App. 1 Cir.,2002) ("Contribution permits **a tortfeasor** who has paid more than his share of a *solidary obligation* to seek reimbursement from the **other tortfeasors** for their respective shares of the judgment, which shares are proportionate to the fault of each[;] . . . . *[t]herefore, contribution is allowed only **among tortfeasors** who are solidarily liable.*"), citing *Dennis v. The Finish Line, Inc.*, 781 So. 2d 12, 44 (La. App. 1st Cir. 2000), *writ denied*, 787 So.2d 319 (La. 2001)(emphasis added).

In the instant case, Dr. Boylston's claim against Mr. Lormand is not in the nature of contribution. Only Dr. Boylston is obligated, **by way of contract,** to pay Whitney that which he owes under his individual promissory note. Consequently, Dr. Boylston is not obligated to pay to Whitney what someone else – here, Mr. Lormand – owes to Whitney – Mr. Lormand owes no debt to Whitney; Dr. Boylston does. Again, Dr. Boylston is obligated *by way of contract*, not tort, to Whitney. Dr. Boylston is the only obligor on the September 7, 2007 promissory note, and that debt is by way of contract, his and his alone. This Court has already concluded Dr. Boylston owes the amounts due and owing under the September 7, 2007 promissory note as a matter of law. Mr. Lormand is not an obligor under that note. Therefore, Dr. Boylston has no contribution claim against Mr. Lormand for the amounts due and owing to Whitney, *under contract* by way of the September 7, 2007 promissory note. Mr. Lormand owes no part of that obligation to Whitney. The promissory note and Whitney look to the signatory, Dr. Boylston, for payment and being otherwise legally enforceable, the amount is owed by the signatory pursuant to the contract, here the promissory note executed solely by Dr. Boylston.[22]

---

[22] Had Whitney sued Dr. Boylston, arguing Dr. Boylston and Mr. Lormand *were joint tortfeasors* who defrauded the bank, perhaps Dr. Boylston would have had a claim for contribution against Mr. Lormand. However, neither Whitney nor Dr. Boylston has alleged that Dr. Boylston and Mr. Lormand were joint tortfeasors who caused

Nor is Dr. Boylston's third-party demand against Mr. Lormand in the nature of indemnity. Louisiana law is clear that a person who is held liable vicariously or passively for *the tort* of another is due indemnity from the culpable tortfeasor, *but that one who is himself at fault is not due indemnity*, because liability for indemnity exists only when the party seeking indemnity is free *of fault* and *has discharged a debt that should be paid wholly by the indemnitor*. In the instant case, this Court has now concluded the matter with Whitney is one of contract and Dr. Boylston's arguments raised as defenses to that contractual obligation, have failed as a matter of law. In its ruling on Whitney's motion for summary judgment as to Dr. Boylston's counterclaim, this Court concluded there was no evidence of fraud on the part of Whitney, or conspiracy to commit fraud on the part of Whitney. Furthermore, although there was no actual evidence, beyond Dr. Boylston's assumptions, that a blackmail scheme by Mr. Lormand existed, in executing the September 7, 2007 promissory note, Dr. Boylston *believed* Mr. Lormand, who is *not* affiliated with Whitney, was blackmailing Mr. Breaux, Whitney's bank officer, to "**give us** [Boylston and Lormand] whatever **we** wanted." (emphasis added) No evidence was presented Whitney had knowledge or complicity of or in this alleged scheme, and this Court concluded Dr. Boylston's deposition testimony illustrated he was all too willing to benefit from any arued underlying immorality or illegality of the challenged transaction *when it acted to protect and benefit him*. Therefore, the Court concluded, in part, under the clean hands doctrine, even if one were to have found evidence of the alleged blackmail scheme, Dr. Boylston could not use a blackmail scheme in which he was complicit and from which he intended to benefit as a defense/counterclaim to avoid the otherwise legal contractual

---

Whitney's harm. Rather, Whitney argued to enforce *the contract* with Dr. Boylston, and Dr. Boylston argues the opposite, rather, he argues that he was duped by Mr. Lormand to enter into the contract. This scenario does not contemplate *contribution* on the part of Mr. Lormand.

obligation he had voluntarily chosen to undertake with Whitney. By Dr. Boylston's own argument, to avoid payment, one would have to find fraud or conspiracy to commit fraud on the part of Whitney – which this Court has found no evidence to support, **and** Dr. Boylston would have to argue, as a defensive bar, the very fraud in which he was, by his own testimony, complicit. He would have to rely on the result of the illegal or immoral act, namely Mr. Lormand's assumed blackmail of Mr. Breaux, of which Dr. Boylston was aware, and from which Dr. Boylston would have benefitted. Again, while there is no evidence of any such blackmail scheme *as to Whitney*, this Court concluded *Dr. Boylston* clearly *believed* and *argued* there was, and his testimony illustrates he believed he was benefitting from such blackmail of Mr. Breaux, because Dr. Boylston *believed* Mr. Breaux was protecting Dr. Boylston from public knowledge of the joint ownership, with Mr. Lormand, of the Houston townhouse.

Even though the Court's finding as to the clean hands doctrine was as to *Dr. Boylston's counterclaim for fraud, a tort, against Whitney*, the same could be said for Dr. Boylston's **third-party demand** against Mr. Lormand asking for payment of all or part of the amounts owed under the individual promissory note. Dr. Boylston cannot claim *tort indemnity* from Mr. Lormand – seeking to recover from Mr. Lormand the amount Dr. Boylston owes Whitney *pursuant to contract* – as Mr. Lormand is not a signatory to that contract.[23]

---

[23] Dr. Boylston's argument that this Court's finding that Dr. Boylston could not recover on his counterclaim for fraud against Whitney because of unclean hands implicates only the September 7, 2007 transaction in which Dr. Boylston borrowed $250,000.00 to pay off the mortgage on the Houston townhouse, and not the February 2007 transaction in which Dr. Boylston and Mr. Lormand jointly acquired the townhouse, is misplaced. The clean hands doctrine becomes relevant in the instant case because of Dr. Boylston's argument that his third-party claims against Mr. Lormand are claims for contribution and/or indemnity. Louisiana law dictates that one with unclean hands cannot recover indemnity from another *tortfeasor* – here *it was Dr. Boylston and Mr. Lormand who acted in concert, as possible tortfeasors, as to Whiney, initially.* Additionally, the September 7, 2007 loan is implicated in the clean hands argument, because it is his liability for this particular loan that Dr. Boylston is attempting to pass on to Mr. Lormand by way of alleged contribution or indemnity. The February 2007 transaction was not the subject of

13

The third-party claims filed by Dr. Boylston against Mr. Lormand are not in the nature of indemnity or contribution. Rather, Dr. Boylston's claims against Mr. Lormand for fraud and conspiracy are more in the nature of independent claims for damages or perhaps poorly plead arguments that the subsequent transfer of Dr. Boylston's ownership interest in the townhouse – the mortgage upon which was paid by way of the money obtained by Dr. Boylston by way of the disputed promissory note -- should be vitiated due to fraud allegedly committed by Mr. Lormand. Indeed, Dr. Boylston seeks to recover the Houston townhouse from Mr. Lormand in order to pay his obligation to Whitney. However, this is a separate and independent claim, even though the factual scenario giving rise to Dr. Boylston's claim against Mr. Lormand arises, partly, out of the same *occurrence* as Whitney's claims against Dr. Boylston (the execution of the September 7, 2007 promissory note). Rule 14(a) does not permit Dr. Boylston's claims against Mr. Lormand within this procedural posture, *because Dr. Boylston's claims are not founded on any actual or potential liability on the part of Mr. Lormand for all or part **of Whitney's** claim against Dr. Boylston* **pursuant to contract,** here the promissory note. Therefore, Dr. Boylston's claims against Mr. Lormand, if any, are not properly couched under Rule 14(a), and they must be dismissed within this procedural context. *See Grasso*, 380 F.2d at 752 (Fifth Circuit affirmed district court's dismissal of third party claims where claims not properly brought pursuant to Rule 14(a)).[24]

Consequently,

IT IS ORDERED that the "Motion to Dismiss Third-Party Complaint, or in the Alternative,

---

Whitney's lawsuit against Dr. Boylston and does not factor in the clean hands argument.

[24] While Dr. Boylston might or might not have had a claim for fraud against Mr. Lormand and Dr. Boylston might or might not have a basis to vitiate the transfer of Dr. Boylston's one-half interest in the Houston townhouse to Mr. Lormand, that claim would, also, be a separate and independent claim not properly filed pursuant to Rule 14(a), because such claim is not derivative of Whitney's contractual claims against Dr. Boylston.

Motion for Summary Judgment" filed by Third-Party Defendant Douglas Lormand [Doc. 129] is GRANTED in its entirety.

IT IS FURTHER ORDERED that the parties shall present a Judgment, approved as to form by all parties, within ten (10) days of the date of this Memorandum Ruling.[25]

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___17___ day of May 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[25] This Court is aware it has already ordered the parties to file a proposed Final Judgment as to those claims then before the Court, however the Judgment that was submitted does not resolve or adjudicate Dr. Boylston's third-party demand.